IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-36

No. COA19-1015

Filed 2 March 2021

Cumberland County, No. 18 CVS 5146

SHARELL FARMER, Plaintiff,

v.

TROY UNIVERSITY, PAMELA GAINEY, AND KAREN TILLERY, Defendants.

Appeal by plaintiff from order entered 1 July 2019 by Judge Andrew T. Heath in Cumberland County Superior Court. Heard in the Court of Appeals 20 October 2020.

*Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellant.*

*Ford & Harrison LLP, by Julie K. Adams, and Wesley C. Redmond, pro hac vice, for defendants-appellees.*

ZACHARY, Judge.

¶ 1    Plaintiff Sharell Farmer appeals from an order granting Defendants' motion to dismiss pursuant to Rules 12(b)(2) and (6) of the North Carolina Rules of Civil Procedure, on the grounds of interstate sovereign immunity. After careful review, we affirm the trial court's order.

### Background

¶ 2    From May 2014 until 9 September 2015, Plaintiff was employed as a college

recruiter for Defendant Troy University. Troy University is a public university, incorporated and primarily located in the State of Alabama. However, Troy University has a recruiting office in Fayetteville, North Carolina, out of which Plaintiff was based, and where Plaintiff worked with Defendants Pamela Gainey and Karen Tillery (the "individual Defendants").

¶ 3        Plaintiff alleges that, while he was employed by Troy University, the individual Defendants committed several acts of "sexual harassment and fraudulent conduct" against him, and that such conduct began "his first day on the job" and continued "throughout his employment," with the individual Defendants making "frequent sexually suggestive remarks to" him. Plaintiff reported the individual Defendants' actions to "the appropriate officials" at Troy University, but following his complaint, Defendant Gainey "immediately retaliated" and suspended him from work for two days for poor performance. On 9 September 2015, Defendant Gainey terminated Plaintiff's employment with Troy University.

¶ 4        On 24 July 2018, Plaintiff filed suit against Troy University and the individual Defendants. Plaintiff asserted claims against Troy University for (1) wrongful discharge from employment, in violation of public policy; and (2) negligent retention and/or supervision of an employee. Plaintiff asserted claims against all Defendants for (1) intentional infliction of mental and emotional distress; and (2) tortious interference with contractual rights. In the event that the trial court determined that

his claims were barred by the doctrine of sovereign immunity, Plaintiff also asserted an alternative claim against all Defendants, alleging a violation of his rights under the North Carolina Constitution.

¶ 5    On 3 October 2018, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, which the trial court denied by order entered on 9 November 2018. On 6 December 2018, Defendants filed their answer to Plaintiff's complaint, generally denying Plaintiff's claims and asserting several defenses, including the defense of sovereign immunity.

¶ 6    On 13 May 2019, the Supreme Court of the United States filed its opinion in *Franchise Tax Board of California v. Hyatt* ("*Hyatt III*"), holding that "States retain their sovereign immunity from private suits brought in the courts of other States." ___ U.S. ___, ___, 203 L. Ed. 2d 768, 774 (2019). On 15 May 2019, citing *Hyatt III*, Defendants filed another motion to dismiss on the grounds of interstate sovereign immunity, pursuant to Rules 12(b)(2) (lack of personal jurisdiction) and (6) (failure to state a claim). In the alternative, Defendants moved for judgment on the pleadings, pursuant to Rule 12(c). On 24 May 2019, Defendants filed an amended motion to dismiss, or in the alternative, for judgment on the pleadings. On 3 June 2019, Plaintiff filed his response.

¶ 7    On 1 July 2019, the trial court entered its order granting Defendants' motion to dismiss pursuant to Rules 12(b)(2) and (6), citing *Hyatt III* in support of its ruling.

Plaintiff timely filed his notice of appeal.

## *Discussion*

¶ 8        Plaintiff asserts that the trial court erred in granting Defendants' motion to dismiss. Specifically, Plaintiff argues that (1) the doctrine of interstate sovereign immunity does not apply in this case; (2) Defendants waived sovereign immunity when Troy University registered in North Carolina as a nonprofit corporation; (3) *Hyatt III* must be construed prospectively, not retroactively; (4) Plaintiff's claim under the North Carolina Constitution survives, regardless of whether Defendants' sovereign immunity defense succeeds; and (5) the trial court committed reversible error in dismissing the individual Defendants from the lawsuit. After careful review, we affirm the trial court's order.

## *I. Standard of Review*

¶ 9        When a trial court grants a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), we must review the record to determine whether there is evidence that would support the trial court's determination that exercising its jurisdiction would be inappropriate. *See Martinez v. Univ. of N.C.*, 223 N.C. App. 428, 430, 741 S.E.2d 330, 332 (2012).

¶ 10        On appeal from a trial court's order on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), this Court conducts de novo review to determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to

state a claim upon which relief may be granted." *Green v. Kearney*, 203 N.C. App. 260, 266, 690 S.E.2d 755, 761 (2010) (citation and internal quotation marks omitted).

## II. Sovereign Immunity

Plaintiff first argues that Defendants cannot avail themselves of the doctrine of interstate sovereign immunity, in that the Supreme Court's holding in *Hyatt III* is inapplicable to the present case. We begin with a brief overview of *Hyatt III*.

### A. Hyatt III

Hyatt claimed to have moved from California to Nevada, a state that "collects no personal income tax," after obtaining a patent that Hyatt anticipated would yield him millions of dollars in royalties. *Hyatt III*, ___ U.S. at ___, 203 L. Ed. 2d at 772. However, the "Franchise Tax Board of California (Board), the state agency responsible for assessing personal income tax, suspected that Hyatt's move was a sham," and it accused Hyatt of misrepresenting his residency in order to avoid paying income taxes in California. *Id.* The Board audited Hyatt, who later "sued the Board in Nevada state court for torts he alleged the agency committed during the audit." *Id.* at ___, 203 L. Ed. 2d at 773. The Board invoked the State of California's sovereign immunity as a defense. *Id.*

Applying Nevada immunity law, "[t]he Nevada Supreme Court rejected [the Board's sovereign immunity] argument and held that, under general principles of comity, the Board was entitled to the same immunity that Nevada law afforded

Nevada agencies[.]" *Id.* And pursuant to then-existing Supreme Court precedent, "each State [was permitted] to decide whether to grant or deny its sister States sovereign immunity" as a matter of comity. *Id.* at ___, 203 L. Ed. 2d at 783 (Breyer, J., dissenting) (citing *Nevada v. Hall*, 440 U.S. 410, 59 L. Ed. 2d 416 (1979)).

¶ 14        In *Hyatt III*, however, the United States Supreme Court explicitly overruled *Hall*, holding that "States retain their sovereign immunity from private suits brought in the courts of other States." *Id.* at ___, 203 L. Ed. 2d at 774 (majority opinion). "The Constitution does not merely allow States to afford each other immunity as a matter of comity; it embeds interstate sovereign immunity within the constitutional design." *Id.* at ___, 203 L. Ed. 2d at 780.

### B. *Application*

¶ 15        Plaintiff first attempts to distinguish the facts of the instant case from the facts of *Hyatt III*, in the hopes of defeating the application of interstate sovereign immunity. Plaintiff argues that in *Hyatt III*, "the legal dispute had its genesis in the State of California. The state taxes owed to California were based on business activities that occurred within the [S]tate of California. The [S]tate of California was involved solely in governmental activity, i.e., collecting state taxes." By contrast, Plaintiff asserts that here, "all the tortious conduct occurred within the sovereign boundaries of North Carolina. The individual tort feasors [sic] were residents in North Carolina." This argument is without merit.

¶ 16    It is evident that for purposes of interstate sovereign immunity, the state in which the allegedly tortious conduct was committed is not a distinguishing fact of any relevance; the dispositive issue is whether one state has been "haled involuntarily" into the courts of another state. *Id.* at ___, 203 L. Ed. 2d at 776. The approach to interstate sovereign immunity laid out in *Hyatt III* is "absolute." *Id.* at ___, 203 L. Ed. 2d at 783 (Breyer, J., dissenting). Regardless, in both the present case and in *Hyatt III*, the tortious conduct occurred in the state in which the plaintiff filed suit. Here, Plaintiff alleges that he was injured by Defendants in North Carolina, where he filed suit; in *Hyatt III*, "[t]he Franchise Tax Board sent its California employees into the state of Nevada[,]" where the employees allegedly committed the torts for which Hyatt sought compensation in the Nevada courts. *Id.* at ___, 203 L. Ed. 2d at 772–73 (majority opinion). Thus, Plaintiff's first argument is inapt.

¶ 17    Plaintiff further contends that allowing the doctrine of sovereign immunity to bar his suit against Defendants erroneously extends the scope of the Alabama Constitution to embrace illegal conduct by North Carolina residents in North Carolina, rather than properly limiting the Alabama Constitution's application to "conduct within the sovereign boundaries of Alabama." Plaintiff then proclaims that

> [t]he sovereignty of North Carolina controls conduct within this state. . . . The sovereignty of North Carolina is sacrosanct. It is absolute. For this Court to apply Alabama sovereign immunity under Article I, § 14 of the Alabama Constitution to conduct which occurred exclusively within

the sovereign boundaries of North Carolina would constitute an intrusion on the sovereignty of this State.

¶ 18 However, the United States Supreme Court succinctly foreclosed this argument in *Hyatt III*:

> The problem with [Plaintiff's] argument is that the Constitution affirmatively altered the relationships between the States, so that they no longer relate to each other solely as foreign sovereigns. Each State's equal dignity and sovereignty under the Constitution implies certain constitutional limitations on the sovereignty of all of its sister States. One such limitation is the inability of one State to hale another into its courts without the latter's consent.

*Id.* at ___, 203 L. Ed. 2d at 779–80 (citation and internal quotation marks omitted).

Under *Hyatt III*, it is clear that the "intrusion"—if any—upon the sovereignty of North Carolina occurred upon the ratification of the United States Constitution, and not upon the trial court's dismissal of Plaintiff's claims on the grounds of interstate sovereign immunity.

¶ 19 Plaintiff next argues that the doctrine of interstate sovereign immunity does not apply in this instance because Troy University was not exercising a governmental function, but rather "came into North Carolina and leased office space in Fayetteville *for a business and commercial venture.*" (Emphasis added). This argument is similarly unavailing.

¶ 20 To begin, Alabama courts consider the State's universities, including Troy

University, to be arms of the State of Alabama entitled to the sovereign immunity enjoyed by the State. *See, e.g.*, *Ex parte Troy Univ.*, 961 So. 2d 105, 109–10 (Ala. 2006); *Stark v. Troy State Univ.*, 514 So. 2d 46, 50 (Ala. 1987). Like North Carolina, Alabama does not recognize a "business and commercial ventures" exception to its sovereign immunity. *Ex parte Troy Univ.*, 961 So. 2d at 109–10.

In addition, although the *Hyatt III* Court did not address the governmental and proprietary function distinction, the United States Supreme Court has previously made clear that a state's waiver of its sovereign immunity must be explicit; as will be more thoroughly explained below, states cannot implicitly waive sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 284, 179 L. Ed. 2d 700, 709 (2011); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682, 144 L. Ed. 2d 605, 620 (1999).

Finally, we note that in advancing this argument, Plaintiff conflates our jurisprudence regarding the doctrines of sovereign immunity and governmental immunity.

> Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity. Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity. These immunities do not apply uniformly. *The State's sovereign immunity applies to both its governmental and proprietary functions*, while the more limited governmental immunity covers only the acts of a municipality or a

municipal corporation committed pursuant to its governmental functions.

*Evans v. Hous. Auth.*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (emphasis added) (citation and internal quotation marks omitted).

As an arm of the State of Alabama,[1] Troy University is immune from suit under the doctrine of sovereign immunity, not governmental immunity. This immunity applies to both its proprietary and governmental functions, *see id.*, unless that immunity is explicitly waived, *see Sossamon*, 563 U.S. at 284, 179 L. Ed. 2d at 709.

Accordingly, Plaintiff's argument that interstate sovereign immunity does not apply in this case lacks merit. Having so concluded, we address Plaintiff's argument that Troy University waived sovereign immunity.

### III. Waiver of Sovereign Immunity

Plaintiff next argues that the trial court erred in granting Defendants' motion to dismiss because Troy University waived its sovereign immunity by registering with the North Carolina Secretary of State as a nonprofit corporation, thus enabling it to sue and be sued in its corporate name. We disagree.

As an Alabama nonprofit corporation, Troy University applied for and received a certificate of authority to conduct its affairs in North Carolina as a foreign nonprofit corporation, pursuant to Article 15 of the Nonprofit Corporation Act. *See* N.C. Gen.

---

[1] *See* Ala. Code § 16-56-1 (2018).

Stat. § 55A-15-03 (2019). The Nonprofit Corporation Act states, in pertinent part:

> (a) Unless its articles of incorporation or this Chapter provides otherwise, every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its affairs, including without limitation, power:
>
>> (1) *To sue and be sued, complain and defend in its corporate name*[.]

*Id.* § 55A-3-02(a)(1) (emphasis added).[2]

The United States Supreme Court has held that a state's waiver of its sovereign immunity cannot be implied; it must be explicitly expressed. *Sossamon*, 563 U.S. at 284, 179 L. Ed. 2d at 708–09. "Courts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Coll. Sav. Bank*, 527 U.S. at 682, 144 L. Ed. 2d at 620 (citation and internal quotation marks omitted).

The *Hyatt III* Court held that one state may not be "haled involuntarily" into the courts of a sister state without its consent. *See* ___ U.S. at ___, 203 L. Ed. 2d at

---

[2] Article 15 of the Nonprofit Corporation Act further states:

> Except as otherwise provided by this Chapter, a foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.

N.C. Gen. Stat. § 55A-15-05(b).

780. Here, Alabama has explicitly *not* consented to be sued:

> The wall of immunity erected by [Ala. Const. 1901] § 14 is nearly impregnable. This immunity may not be waived. This means not only that the state itself may not be sued, but that this cannot be *indirectly* accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to *affect the financial status of the state treasury*.

*Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002) (citations omitted).

¶ 29 Our Supreme Court has similarly held that "[w]aiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537–38, 299 S.E.2d 618, 627 (1983). "Statutory authority to 'sue or be sued' is not always construed as an express waiver of sovereign immunity and is not dispositive of the immunity defense when suit is brought against an agency of the State." *Id.* at 538, 299 S.E.2d at 627.

¶ 30 In *Guthrie*, our Supreme Court determined that an enabling statute that "vests the Ports Authority with the authority to 'sue or be sued,' " when read together with the provisions of the State Torts Claims Act, N.C. Gen. Stat. § 143-291 *et seq.*, did not constitute "consent for the Ports Authority to be sued in the courts of the State[,]" *Guthrie*, 307 N.C. at 538, 299 S.E.2d at 627. Rather, the Court concluded that the statutes evince "a legislative intent that the Authority be authorized to sue as [a] plaintiff in its own name in the courts of the State but contemplates that all tort

claims against the Authority for money damages will be pursued under the State Tort Claims Act." *Id.*

¶ 31 Plaintiff's argument in the case at bar is no more successful than that considered and rejected by our Supreme Court in *Guthrie*. Assertions of statutory waivers of state sovereign immunity are subject to strict construction. *Id.* at 537–38, 299 S.E.2d at 627. Unlike *Guthrie*, which concerned a suit against an agency of the State of North Carolina upon which the enabling legislation explicitly bestowed the authority to "sue or be sued," *id.*, Plaintiff here has not shown any similarly explicit waiver of state sovereign immunity, either in the Alabama statutes authorizing Troy University's activities or in our General Statutes.

¶ 32 In that interstate sovereign immunity is a fundamental right "embed[ded] . . . within the constitutional design," *Hyatt III*, ___ U.S. at ___, 203 L. Ed. 2d at 780, we must "indulge every reasonable presumption against [its] waiver," *Coll. Sav. Bank*, 527 U.S. at 682, 144 L. Ed. 2d at 620. Accordingly, we will not read into the Nonprofit Corporation Act a blanket waiver of interstate sovereign immunity for an arm of another state that registers as a nonprofit corporation in the State of North Carolina, absent clear and express statutory authority to do so.

¶ 33 Troy University has not waived its interstate sovereign immunity by registering with the North Carolina Secretary of State as a nonprofit corporation. We therefore proceed to Plaintiff's next issue presented: whether the Supreme Court's

decision in *Hyatt III* may be applied retroactively.

### IV. Retroactive Application of Hyatt III

Plaintiff next asserts that *Hyatt III* "must be construed prospectively such that it only applies to causes of action that accrue after May 13, 2019, the date of the Supreme Court Opinion," and consequently, the decision cannot affect his case, because his "legal rights vested on September 9, 2015," the date Defendant Gainey terminated Plaintiff's employment with Troy University. We disagree.

To support this contention, Plaintiff cites the landmark case of *Smith v. State*, in which our Supreme Court held that when the State enters into a valid contract, it implicitly waives its sovereign immunity with regard to claims for breach of that contract. 289 N.C. 303, 320, 222 S.E.2d 412, 424 (1976). In *Smith*, the Court also denied retroactive application of its holding, stating that "in this case, and in causes of action on contract arising after the filing date of this opinion, . . . the doctrine of sovereign immunity will not be a defense to the State." *Id.*

Our Supreme Court's decision in *Smith* is clearly distinguishable from *Hyatt III* and the case before us. *Smith* addressed the sovereign immunity of the State of North Carolina, in its own courts, from suits arising out of contracts into which the State entered voluntarily. *See id.* at 309–11, 222 S.E.2d at 417–18. Interpreting such questions of *intrastate* sovereign immunity is a matter of state law. *See id.* at 313–20, 222 S.E.2d at 419–23.

¶ 37        Conversely, *Hyatt III* concerns the federal constitutional implications of *interstate* sovereign immunity, in which one state is haled into the courts of another state without its consent. ___ U.S. at ___, 203 L. Ed. 2d at 774. As the Supreme Court explained, "although the [federal] Constitution assumes that the States retain their sovereign immunity except as otherwise provided, it also fundamentally adjusts the States' relationship with each other and curtails their ability, as sovereigns, to decline to recognize each other's immunity." *Id.* at ___, 203 L. Ed. 2d at 775. Stated another way, "[i]nterstate immunity . . . is implied as an essential component of federalism." *Id.* at ___, 203 L. Ed. 2d at 781 (citation and internal quotation marks omitted). Accordingly, in that *Smith* addressed *intrastate* sovereign immunity—a matter of state law—and not *interstate* sovereign immunity with its attendant federal constitutional concerns, *Smith* is not persuasive on the issue of whether *Hyatt III* applies retroactively, or merely prospectively, as Plaintiff contends.

¶ 38        Furthermore, *Smith* stands as a clear exception to our appellate courts' traditional adherence to the "Blackstonian Doctrine":

> Under a long-established North Carolina law, a decision of a court of supreme jurisdiction overruling a former decision is, as a general rule, retrospective in its operation. This rule is based on the so-called "Blackstonian Doctrine" of judicial decision-making: courts merely discover and announce law; they do not create it; and the act of overruling is a confession that the prior ruling was erroneous and was never the law.

*Cox v. Haworth*, 304 N.C. 571, 573, 284 S.E.2d 322, 324 (1981) (citations omitted). The presumption of retrospectivity "is one of judicial policy, and should be determined by a consideration of such factors as reliance on the prior decision, the degree to which the purpose behind the new decision can be achieved solely through prospective application, and the effect of retroactive application on the administration of justice." *Id.*

¶ 39      *Hyatt III* appears to portend its own retroactive application. In considering the effect of overruling *Nevada v. Hall*, the Supreme Court "acknowledge[d] that some plaintiffs, such as Hyatt," had demonstrated reliance upon *Hall* "by suing sovereign States." *Hyatt III*, ___ U.S. at ___, 203 L. Ed. 2d at 782. Yet, despite this recognition, the Court noted the unfortunate reality that "in virtually every case that overrules a controlling precedent, the party relying on that precedent will incur the loss of litigation expenses and a favorable decision below." *Id.* "Those case-specific costs are not among the reliance interests that would persuade . . . an incorrect resolution of an important constitutional question." *Id.*

¶ 40      Moreover, the Court was quite clear that its prior holding in *Hall* was "irreconcilable with our constitutional structure and with the historical evidence showing a widespread preratification understanding that States retained immunity from private suits, both in their own courts and in other courts." *Id.*

¶ 41      After careful consideration of the Supreme Court's opinion in *Hyatt III*, and in

light of our courts' presumption that the decision of a higher court generally operates retroactively, *Cox*, 304 N.C. at 573, 284 S.E.2d at 324, we conclude that retroactive application of *Hyatt III* is required to achieve the purpose of the Court's holding. In so concluding, this Court simply recognizes the interstate sovereign immunity—an implicit and "essential component of federalism[,]" *Hyatt III*, ___ U.S. at ___, 203 L. Ed. 2d at 781—which the State of Alabama never waived.

¶ 42        We find additional support for our conclusion in the opinions of other states that have already decided this issue. "In the absence of persuasive and binding North Carolina cases, we examine the law of other states." *Russell v. Donaldson*, 222 N.C. App. 702, 706, 731 S.E.2d 535, 538 (2012).

¶ 43        Several other states have applied *Hyatt III* retroactively. The Supreme Court of Kentucky applied *Hyatt III* retroactively, reversing the denial of the State of Ohio's motion to dismiss claims against it in a lawsuit filed in Kentucky before *Hyatt III* was decided. *Ohio v. Great Lakes Minerals, LLC*, 597 S.W.3d 169, 171–73 (Ky. 2019), *cert. denied*, ___ U.S. ___, 208 L. Ed. 2d 87 (2020). The Appellate Court of Connecticut similarly applied *Hyatt III* retroactively, affirming the dismissal of a suit filed in 2018 by one of its citizens against the State of Rhode Island, one of its agencies, and several of its agents. *Reale v. State*, 218 A.3d 723, 726–27 (Conn. App. Ct. 2019). And the Supreme Court of New York, Appellate Division, applied *Hyatt III* retroactively in affirming a New York trial court's pre-*Hyatt III* grants of motions to dismiss made by

an agency of the State of Arizona and one of its employees. *Trepel v. Hodgins*, 121 N.Y.S.3d 605, 606 (N.Y. App. Div. 2020).

¶ 44 Recognizing that "sovereign immunity is a jurisdictional issue[,]" *M Series Rebuild, LLC v. Town of Mount Pleasant, N.C.*, 222 N.C. App. 59, 62, 730 S.E.2d 254, 257, *disc. review denied*, 366 N.C. 413, 735 S.E.2d 190 (2012), and consonant with *Hyatt III*'s analysis of interstate sovereign immunity as a "fundamental aspect" of each state's sovereignty, ___ U.S. at ___, 203 L. Ed. 2d at 775, as well as our courts' presumption of retrospectivity, *see Cox*, 304 N.C. at 573, 284 S.E.2d at 324, we conclude that *Hyatt III* is appropriately applied retroactively, and that Plaintiff's argument to the contrary must fail.

## V. North Carolina Constitutional Claim

¶ 45 Plaintiff also contends that the trial court erred in granting Defendants' motion to dismiss his claim under Article 1, Section 19 of the North Carolina Constitution alleging "a violation of equal protection of the law," which he asserted in the event that the trial court determined that his other claims were barred by sovereign immunity. Citing our Supreme Court's decision in *Corum v. Univ. of N.C.*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992), Plaintiff maintains that his "alternative state constitutional claim . . . trump[s] the doctrine of sovereign immunity." We disagree.

¶ 46 It is well established that a plaintiff may not proceed with a claim directly

under the North Carolina Constitution when an adequate alternative remedy is available. *Corum*, 330 N.C. at 784, 413 S.E.2d at 291. In *Corum*, a North Carolina resident complaining of injury resulting from the actions of an arm of the State of North Carolina asserted a direct constitutional claim, which the State contended was barred by the doctrine of sovereign immunity. *Id.* at 766, 413 S.E.2d at 280. Our Supreme Court determined that "[t]he doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights" of our State Constitution. *Id.* at 785–86, 413 S.E.2d at 291. "[W]hen there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail." *Id.* at 786, 413 S.E.2d at 292. Thus, "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under [the North Carolina] Constitution." *Id.* at 782, 413 S.E.2d at 289.

¶ 47        Nonetheless, *Corum*, like *Smith* discussed above, involved issues of *intrastate* sovereign immunity, and is therefore similarly inapplicable to the case at bar. Again, the instant case raises an issue of *interstate* sovereign immunity, in that Plaintiff has asserted claims against an arm of the State of Alabama and its agents, the individual Defendants. While the Declaration of Rights in the North Carolina Constitution may indeed trump our State's *intrastate* sovereign immunity, in the *interstate* context, the federal Constitution protects the several states' sovereign immunity vis-à-vis one

another; indeed, it is "embed[ded] . . . within the [federal] constitutional design."

*Hyatt III*, ___ U.S. at ___, 203 L. Ed. 2d at 780.

> Interstate sovereign immunity is . . . integral to the structure of the Constitution. Like a dispute over borders or water rights, a State's assertion of compulsory judicial process over another State involves a direct conflict between sovereigns. *The Constitution implicitly strips States of any power they once had to refuse each other sovereign immunity*, just as it denies them the power to resolve border disputes by political means. Interstate immunity, in other words, is implied as an essential component of federalism.

*Id.* at ___, 203 L. Ed. 2d at 781 (emphasis added) (citation and internal quotation marks omitted).

¶ 48 Accordingly, Plaintiff's *Corum* claim is without merit. The trial court did not err in granting Defendants' motion to dismiss this claim.

## VI. The Individual Defendants

¶ 49 Lastly, Plaintiff argues that the trial court committed reversible error by granting Defendants' motion to dismiss with respect to the individual Defendants as well as Troy University. Two of Plaintiff's assertions on this issue sound from his prior arguments: (1) that Troy University is not entitled to sovereign immunity, so "the individual Defendants, who are residents and citizens of North Carolina, cannot legitimately raise the issue of sovereign immunity"; and (2) the individual Defendants committed intentional torts as "employees of a non-profit corporation doing business

in North Carolina" and "should be treated like any other employees of a non-profit corporation in this state." These arguments lack merit.

¶ 50    "A suit against a public official in [her] official capacity is a suit against the State." *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (citation and internal quotation marks omitted). Our Supreme Court has held that "when the complaint does not specify the capacity in which a public official is being sued for actions taken in the course and scope of [her] employment, we will presume that the public official is being sued only in [her] official capacity." *Id.* at 360–61, 736 S.E.2d at 167.

¶ 51    In his complaint, Plaintiff avers that the individual Defendants were "agent[s] and employee[s]" of Troy University. At no point in his complaint, however, does Plaintiff specify that he is suing either individual Defendant in her personal capacity. Accordingly, we must presume that he sued the individual Defendants in their official capacities. *Id.* As such, his claims against the individual Defendants are as much against the State of Alabama as are his claims against Troy University, *see id.* at 363, 736 S.E.2d at 168, and his argument to the contrary is without merit. Thus, the individual Defendants are protected by the sovereign immunity afforded to Troy University, and the trial court did not err in dismissing Plaintiff's claims against the individual Defendants.

### Conclusion

For the foregoing reasons, Plaintiff has not shown that the trial court erred in granting Defendants' motion to dismiss. Accordingly, we affirm the trial court's order.

AFFIRMED.

Judges MURPHY and COLLINS concur.